[No. 24530. Department Two. December 13, 1933.]

F. C. BLOXOM et al., Appellants, v. WILLIAM
DEITCHLER et al., Defendants, GEORGE
FISCHER et al., Respondents.[1]

[1]Reported in 27 P. (2d) 720.

*Byers & Byers, Alfred J. Westberg, Roberts, Skeel & Holman, W. E. Evenson, Bausman, Oldham, Cohen & Jarvis,* and *Weter, Roberts & Shefelman,* for appellants.

*Edgar C. Snyder,* for respondents.

TOLMAN, J.—This is another Osner & Mehlhorn case. The contest is between the holders of two different sets of mortgage notes, each secured by a mortgage on the same property. The trial court found in favor of the holders of a note senior in point of time, secured by a mortgage senior in date of recording, to the notes and mortgage under which the plaintiffs claim. A decree of foreclosure was entered by which defendants and cross-complainants Fischer were given a first lien in the amount of $2,265.64, together with interest, attorney's fees and costs; and the plaintiffs' claims, aggregating $8,103.75, plus interest, attorney's fees and costs, were established as junior thereto.

The plaintiffs, appealing, assign as error the ruling which establishes a lien in favor of respondents Fischer superior to the lien of the mortgage under which they claim.

The numerous cases arising out of the activities of August Mehlhorn, Jr., as the managing officer of Osner & Mehlhorn, Inc., have pretty thoroughly established the law applicable to every phase of these transactions, but here, as in most of the other cases, the difficulty lies in applying the law to the peculiar facts of the particular case. The facts here involved are substantially as follows:

On April 15, 1926, William Deitchler and wife executed a mortgage on real estate owned by them running to Osner & Mehlhorn, Inc., as mortgagee, to secure the payment of five notes aggregating six thousand dollars in amount, due in one, two and three

years after date. The mortgage was duly recorded on April 17, 1926. On April 19, 1926, note No. 4 of this series for the sum of one thousand six hundred dollars, due three years after date, was, for a valuable consideration then paid, endorsed without recourse by Osner & Mehlhorn, Inc., to respondents Fischer and then delivered to them. Osner & Mehlhorn, Inc., remitted the interest on this note to the Fischers, as it matured, up to and including the payment due in October, 1929. The other notes secured by this mortgage seem to have been paid and retired. At any rate, no one is here asserting any claim under any of them. The mortgage was never released or assigned in fact or of record.

On April 15, 1929, or on the maturity date of the mortgage just described, Deitchler and wife made another mortgage to Osner & Mehlhorn, Inc., covering the same property, which contains no reference whatever to the first mortgage. This latter mortgage purports to secure the payment of six notes aggregating seven thousand dollars in amount, and it was recorded on April 16, 1929. The notes secured by this mortgage were sold before maturity and for a valuable consideration by Osner & Mehlhorn, Inc., to the several appellants, none of whom had any actual knowledge of the prior mortgage.

This general setup is not disputed, and with the recording act in mind, which charges all the world with notice of the mortgage first recorded, the presumption is in favor of the *bona fide* holders of the notes thereby secured. This presumption is, of course, rebuttable, and the burden is on the appellants to establish by convincing evidence that, by some act or through some course of dealing, the respondents have lost the rights which the recording act gives to them.

It is quite true that the Fischers did not demand

or receive an assignment of the mortgage or place such an assignment of record at the time they purchased the note which they now hold; and it is also true that the course of their dealing with Osner & Mehlhorn, Inc., was such as to clearly warrant a holding that they made Osner & Mehlhorn, Inc., their agent to collect both interest and principal, as was held to be the fact in the case of *Pfeiffer v. Heyes,* 166 Wash. 125, 6 P. (2d) 612. Here, however, there is another fact which must also be considered, which was not present in the *Heyes* case. There, the maker of the notes had paid the amount thereof to Osner & Mehlhorn, Inc., upon the assumption that it still held the notes; and the payment was held good because Osner & Mehlhorn, Inc., was found to be the authorized agent of Heyes, to whom the notes had been assigned.

So here, if Deitchler had paid the note held by the Fischers to Osner & Mehlhorn, Inc., in money on April 15, 1929, we would cheerfully hold, under the rule of the *Heyes* case, that the note was thereby paid and discharged. But, on April 15, 1929, when the note matured, Deitchler did not pay it in money or at all. On the contrary, at the request of Osner & Mehlhorn, Inc., he made a new mortgage securing a new set of notes, and placed them in the possession of Osner & Mehlhorn, Inc., without obtaining a satisfaction of the prior mortgage or the surrender and cancellation of the notes secured thereby, although at that time Deitchler had reason to know that the notes secured by the prior mortgage had been negotiated by Osner & Mehlhorn, Inc.

Deitchler testified on direct examination:

"Q. Did he give you back the other notes? A. No. He said, 'You leave it here a few days and I will take care of it; I will get the old notes and cancel them,' he said, 'It will be all right.' "

On cross-examination, he further testified:

"Q. Did you ever get the old notes? A. Never got any of them, no. Q. Did you ever demand them? A. Well, no. Q. Did you ever go to the court house to see if the mortgage was satisfied,—the first one? A. No, I did not. Q. Did any money pass between you at the time, in April, 1929, of this $7,000 mortgage? A. No. Q. You did not pay Mr. Mehlhorn any money at that time at all? A. I only paid him the interest. Q. You paid him the interest that was due? A. Yes. Q. But you paid nothing on the principal? A. No."

From all this, it clearly appears that the new mortgage was not intended to be substituted for the old one, but that Deitchler made Osner & Mehlhorn, Inc., his agent to negotiate the new notes and with the proceeds to take up the prior outstanding obligations. It would seem, then, that Mehlhorn's default was in the duties which he owed to Deitchler rather than in his duty to the Fischers.

Immediately after the giving of the new mortgage, Mehlhorn negotiated the notes thereby secured, for a valuable consideration, to the several appellants; and they, in reliance upon Mehlhorn, took and paid for the notes with constructive notice of the existence of the first mortgage and without demanding its satisfaction. Clearly, at the time they purchased the notes, Mehlhorn had not wronged any one, and if they had then demanded, as a condition to be performed before paying over their money for the notes, that the prior mortgage be released of record, probably no one would have been wronged, but in any event their diligence in that respect would have protected them. *Beckmann v. Ward,* 174 Wash. 326, 24 P. (2d) 1091.

But it is contended that, when the new notes were negotiated, Mehlhorn received sufficient cash to pay the Fischer note. Very true, but, as we have already

seen, Mehlhorn negotiated the new notes as Deitchler's agent (not Fischer's) and when the money came into Mehlhorn's hands, his first duty was to Deitchler to use that money to take up Deitchler's note then in the hands of the Fischers.

The mere fact that, at about the time the new notes were negotiated, the Fischers were given credit for $1,656 on the books of Osner & Mehlhorn, Inc., did not discharge the duty owing to Deitchler. The Fischer's note was outstanding, as Deitchler had reason to know, and Mehlhorn owed him the positive duty of using the proceeds of the new notes to take up and cancel the old note held by the Fischer's. When Mehlhorn failed to perform that duty, the default occurred. The loss flows from that default rather than from the subsequent failure to pay the Fischers with money already embezzled from Deitchler.

This is not a case of Mehlhorn acting as the agent of but one party. Here he acted as the agent of both parties, both trusted him fully, but he defaulted first in the duty owing to Deitchler.

"It would seem a logical application of this doctrine to hold that the innocent party who entrusts money, or such paper as Mrs. Flynn delivered to Mehlhorn, to a defaulter, who is the agent of that party and another, with instructions to pay the money, or the proceeds of the paper, to the other party, must stand the loss occasioned by the larceny of the money, unless it clearly appears that the money has been paid over to the third party and stolen from him by the dishonest agent." *Nicklisch v. Flynn,* 168 Wash. 310, 11 P. (2d) 1066.

And finally, Deitchler did not deal with Mehlhorn as the mortgagee, or as the apparent holder of the mortgage notes, nor did he deal with Mehlhorn as the agent or apparent agent of the Fischers. Appellants did deal with Mehlhorn as the mortgagee in the last mort-

· gage, but with notice of a prior mortgage outstanding of record and unsatisfied. Quite obviously, there is nothing in all this to overcome the presumption which we mentioned in beginning our discussion.

It seems useless to review all of the Osner & Mehlhorn cases, and to point out the differing facts which, though slight in themselves, call for differing results. We have here applied only hornbook law to the facts as we see them.

■ Lastly, it is urged that, by filing a claim in the bankruptcy proceedings against Osner & Mehlhorn, Inc., the respondents have ratified the acts of Mehlhorn, and that they are now bound by their election. It is true that they filed such a claim and then amended it, setting up the facts then known to them, asserting their rights under the mortgage, denying the agency, and claiming as general creditors only in the event that their rights under the mortgage should not be sustained. We think the record fails to show a knowledge of the facts and an election based thereon which is binding upon respondents.

The judgment is affirmed.

BEALS, C. J., HOLCOMB, BLAKE, and GERAGHTY, JJ., concur.